Thank you, Your Honor. This is a case where somebody's judgment was granted in a 74 case. Excuse me, we're having a hard time hearing you because your voice is breaking up, and I don't know if you're on a speakerphone or something. No, I am not. I don't know what's going on here. It's better now. It is better now. Go ahead. This is an appeal from the District Court's granting of a summary judgment on an 74 case. The rule here in the Ninth Circuit is that 74 cases nearly always require a jury to dispute its factual content, and 54 cases, summary judgment should be granted sparingly. Counsel, let me- This is a case where- Counsel, can you hear me? Yes. I was going to ask you the following question. The issue to me surrounds the idea of qualified immunity, which is applicable in these cases at times. And what specifically is your view about what was unreasonable? Was it the decision to take your client down, or was it the decision to take her down in an enclosed area where she could be injured? What exactly, in your view, would not have been reasonable? Well, in this case, she was not a suspect prior to the police being there. She was not armed, and the injuries that were caused by this were profound. In many ways, they were equal to what were inflicted on G. Orley and G. Orley v. Rutherford. While it was not deadly force, it was a quantum of force that definitely caused serious injury. Well, what I'm wondering is whether the injury was caused by the takedown or by the place where the takedown happened. In other words, you could use minimal force, but someone could happen to get injured if they were next to a hard object or next to a cliff, where they could fall off, or you could use excessive force in the first instance. And that's what I'm wondering about this case. Well, I think the takedown itself was deceptive. I mean, this was not a suspect. She merely reached for the door to balance herself. She was quite intoxicated. The Ninth Circuit law is very clear that the police, when they're on notice, a person is either intoxicated or emotionally disturbed. She called the police. She was the domestic battery victim. And they were on notice that she was emotionally disturbed. Let me ask, Mr. Perkins, let me ask sort of a similar question that Judge Graber asked, and, you know, really trying to get to the same point. Seems to me the evidence in this case is that your client's injury was unintentional in a sense. In other words, you know, they didn't mean to have her hit in the eye. It's almost accidental. Maybe it's negligent. I don't know. But the question is, in other words, what they intended to do was to take her down. Right. They didn't intend for her to get hit in the eye. So my question is, you know, how do we measure whether the force was excessive or not? What they intended to do or what, you know, sort of accidentally happened? And are there any cases on that? Your question is a question. You know, that's what juries are for. There wasn't one jury to decide whether it was accidental or not, given the gravity of the injury. It's the jury's province to decide whether it was appropriate to take her down. It's the jury's province to determine, you know, whether she was a threat or whether left for major and could have been taken. It's the jury's question to decide whether her reaching her hand out for balance could have caused the police to be in fear reasonably. All of those are jury questions, and that's why summary judgment is to be granted sparingly. This case was taken completely out of the FactFinder's province. Excessive force cases generally require a jury. It didn't happen here. My client's position has always been that she reached out, grabbed the door to steady herself. Any force used in that particular time on a person that wasn't even a suspect, that was actually a victim, that actually called the police for help, is a theft. And given the gravity of the injury that occurred, a reasonable jury could find that this was not accidental. Mr. Pervens, you know, you're giving a version of the story, but isn't the record that your client pleaded guilty to assault or something like that? She did. She pleaded guilty to a misdemeanor battery. I mean, that's more than just defending herself, isn't it? I mean, we have to almost accept that. Well, we have to accept that as uncontroverted, don't we? Yes. And I would also like to present to the jury someday the fact that this battery charge was filed some year after this occurred and after this lawsuit was filed. I think there's problems with that. Well, what are you saying? You're saying in this kind of suit you can challenge the validity of the conviction? No. But it certainly, the manner in which that charge was filed, I think a reasonable jury could find that it was filed in response to this lawsuit. It was filed to punish her for filing a federal civil rights lawsuit. All I can say is I don't know too many trial judges who would let that kind of evidence in. But go ahead. It was a misdemeanor battery. No injuries were caused to the plea. Unfortunately, Ms. Tanda was put in a position where this was originally charged as a felony battery. It's an unfortunate fact of life when you're put into that situation that sometimes you have to take a plea agreement for a misdemeanor. Well, counsel, it seems to me that what happened, the important part of the conviction is that presumably your client pleaded guilty because the facts on the ground were sufficient to demonstrate at least the misdemeanor battery to which she pleaded. And so those facts, as they existed at the time of this incident, seem to me that we have to take them as a given. We do. Do you have other points you'd like to make, or would you like to save a few minutes for rebuttal? I'd like to save a few minutes for rebuttal. All right. We'll hear from Mr. Adams. Thank you, Your Honors. This is Randy Adams. I'm an attorney here in Coeur d'Alene. The only issue before the court is the district court's grant of summary judgment as to the excessive force claim. There were other claims of conspiracy and municipal liability that were raised in the complaint that the district court granted summary judgment on, but there's no argument made on those claims. So regardless of what happens today in this excessive force claim, I just want to make clear that those other claims have not been challenged and the dismissal on those claims should remain in place. As for the excessive force claim, the defendant believes the summary judgment was and is justified for two reasons. First, we believe that the force used by the officers was objectively reasonable as a matter of law. Just a minute now. When you say the force used, you mean hitting her head into the rail so she got, you know, shattered eye socket? No. I think what we need to look at is what was the act of force. Some of the cases talk about what was the act of violence. And what we're talking about is the takedown. No, no, no. We're talking about a takedown in a confined space. Correct. I mean, that is one of the factors that the court has to consider. The district court in this case ruled, and we wrote our brief before the Torres II decision came out. And I think we need to look a little bit at the Torres II case for what questions we ask. And the Ninth Circuit there said where the officer's particular use of force is based on a mistake of fact, the court asks whether a reasonable officer would have or should have accurately perceived the fact. What was the mistake here? Well, that's, I think, what Judge Graber and the other judge has raised is the takedown in the particular area where it was done, the landing. Well, what was the mistake? They knew they were on a landing. They knew they were in a confined space. Correct. So what was the mistake? Well, I suppose if there was a mistake, the mistake would be whether that handrail posed a danger to a situation where the police thought that a takedown was necessary. Well, let me give you a scenario and ask you how you would analyze it. Let's assume in this hypothetical that the amount of force, let's say there's clearly probable cause to arrest and handcuff someone who's trying to get away and has committed a crime. And there's no question that a reasonable officer would be able to take this person down, you know, wrestle them to the ground or whatever. But let's also suppose that they're two feet away from a cliff and that in grabbing the person, you know, they fall over the cliff. How do we analyze that? Do we just look at the takedown period and then say, well, was that reasonable and stop? Or is there a separate analysis for the location? What do we do analytically? Well, I appreciate the question. I think that's exactly what the Torres case was saying is that would a reasonable officer would or whether a reasonable officer would have or should have perceived that danger. So in the case of a cliff, you've got a very, I would assume, a very obvious situation that would present a danger for taking down. In this case, you've got a relatively normal staircase, landing, handrails, which are required on staircases everywhere. And so the question is whether a reasonable officer in the position of these officers would have or should have perceived that handrail to be a danger or to present a danger. And I think the evidence- Counsel? Yes. This is Judge Rawlinson. I just wanted to ask you, was there any particular reason why the officers felt it necessary to remove her to the stairwell area before taking her down? I think that, well, I think the, first of all, I don't think they had made the decision to arrest in the apartment. And I think the evidence in the record, in the police report, and in the ISP investigation indicate that she was not in her apartment. She was in a neighbor's apartment. She apparently was irritating the neighbors. And so they wanted to take her out of that apartment. They wanted to take her downstairs where her assault took place. And on the landing- Counsel, but my question is, why wouldn't they arrest her in the apartment if that's where the battery of the officer took place? Well, I suppose there were two batteries, if you want to call them that. The first one was in the apartment. Isn't that what she pled guilty to? No, I think she pled guilty to battery, but there were two batteries. The one where she tried to open the door and she slapped Officer Cantrell's hand away. And then the second battery occurred on the landing, outside the apartment, where she cocked her fist and punched Officer Moore, who was able to deflect it. Well, I tried to punch him, yeah. Well, he deflected it, so there was physical contact. And so it was really, I guess I've been looking at it as the battery, the significant battery, was on the landing. Which battery resulted in the conviction? I can't tell you that. I don't know if they divided that up or if they just charged her for assault on a police officer, both police officers. Mr. Adams, this is Judge Toshima. Judge Lodge concluded that whether the amount of force was excessive is a jury question, right? He did. What's wrong with that conclusion? Well, again, I'm sorry, go ahead. No, go ahead. Again, I think what Judge Lodge said in reaching that conclusion was that he assumed that the battery was slamming the plaintiff's head into the handrail. He says that. That's what he thinks the force was. The excessive force, right. The excessive force. And it goes back to your question about, you know, wasn't that negligent? Wasn't that a mere negligent act as opposed to the act of force that was initiated by the officers was the takedown? And I think what we do is we analyze whether the takedown was excessive force under all of the circumstances. So one of the circumstances is a confined area with hard objects in it. Correct. But that happens all the time. Police takedown people indoors, in apartments. There are tables. There are chairs. There are lots of things around it. Yes, the officers should take into consideration where they are. But, again, we're dealing with split-second decisions. We have an intoxicated, combative, resisting person who takes a swing at an officer at the very least, and the officers have to make a quick decision. Do we take her down and control her, or do we try to take this combative person down several flights of steps, which is more dangerous if she's fighting? So I think that's a consideration that the court needs to consider. I think Judge Lodge missed that because he was looking narrowly at the handrail. This is not a Davis v. Las Vegas case where the officers intentionally threw somebody into a wall. I think this case is very close to the Lucktell v. Hageman case from the Ninth Circuit. Counsel, this is Judge Rawlinson. Was there any evidence in the record regarding whether it was necessary for the officers to take Ms. Conda down as opposed to just handcuffing her in a standing position? I don't know that that was explained by any of the officers as to why they did that as opposed to trying to handcuff her standing up. But I think the facts are undisputed that the plaintiff tried to hit the officers on the landing, turned, was combative, was irrational, was erratic. The officers did not decide to take her down until she tried to punch an officer on the landing. And so under those circumstances, I think the officers certainly had choices, and they made the choice to take her down in that confined space rather than attempt to take somebody who was resisting down a series of steps where a lot more injuries could have occurred. I think Judge Graber asked about the qualified immunity, and she asked what was unreasonable about the officers' actions. Again, in the Lucktell case, which I just referred to, which was from October of 2010, this was a case where the court affirmed a summary judgment dismissing excessive force claims, both on the grounds that the force used was objectively reasonable and alternatively on the issue of qualified immunity. And the court in that case, in a very similar case, the plaintiff in that case was on drugs instead of alcohol, was very combative, and she suffered significant injuries in that case as well. Dislocated shoulder, torn shoulder ligaments requiring surgery. Yet the court found that because she was struggling, because she was resisting, because she admitted all of these things, the officers were objectively reasonable in taking her to the ground and in trying to control her. But they also talked about qualified immunity. And in ruling that the officers would be entitled to qualified immunity, they said that Lucktell has not shown that the use of the officers' bodies and handcuffs in the manner deployed violated a clearly established constitutional right. Well, that gets to the second question I wanted to ask you. If we were to conclude that, you know, the force used here was excessive, such as to amount to a constitutional violation, that's only the first half of the qualified immunity analysis. So the second half, as you were just arguing, is, well, was that right clearly established? And what's your answer to that question in this case? Well, I think that the question to be asked is whether a reasonable officer would have been reasonable in assuming that negligence in performing a lawful act, negligence that is taking somebody down in a confined area where they might be injured, performing a lawful act, which is the takedown, might violate the Constitution.  The question is whether there was a clearly established right to be free from the excessive force used in this circumstance. I think that's the question. Well, the clearly established right is, yes, people are entitled to be free from excessive force. But I view this question in terms of would a reasonable officer in this case have assumed or have knowledge that performing a legal act, which is the takedown, in a confined place, might violate the Constitution. In other words, if they were negligent in taking her down such that she hit her head on a handrail, would a reasonable officer believe that that violated a clearly established constitutional right? And the problem with your argument is you're presupposing that it was negligence as opposed to excessive force. And the question was predicated on the assumption that it was excessive force. So if it's excessive force, it can't be negligent. Well, if the court decides as a matter of law that it was excessive force, and I don't know if the court can do that, then there is no reasonable officer is going to know that you don't commit excessive force. Well, if we look at the facts in the light most favorable to the plaintiff, which we are required to do in performing a qualified immunity analysis, that's what we would come up with. Well, I mean, this court, the Ninth Circuit, did the same thing in the Lundell case. It dealt with a situation where a suspect was harmed by the use of force, seriously harmed by the use of force. And the court found both that as a matter of law, taking all of the facts in the light most favorable to the plaintiff, found that the use of force was objectively reasonable and found that qualified immunity applied. What case is that you're citing to? It's called Lucatel, L-U-C-H-T-E-L. Did you cite that in your brief? I did not, and I only found it as I was preparing for argument today. You have a citation for that? I do. 623 F. 3rd, 975. Thank you, counsel. Your time has expired. Thank you, judges. And we will hear again from Mr. Perveance if he wishes. You have about six, almost seven minutes left for rebuttal if you would like to use some of that or all of that. Thank you, Your Honor. First of all, let me ask you, are you familiar with this Lucatel case? I am not. All right. Go ahead. I'm referring to Glenn v. Washington County, which came out in November of last year, which was after we submitted the brief. In that, the Ninth Circuit said that we have made clear that the desire to resolve simply a potentially dangerous situation is not the type of governmental interest. Standing alone justifies the use of force that may cause serious injury. What's the citation? What's the citation on this one? What's your citation? I've only got the Ninth Circuit. Its number is 10-35636. 10-356 what? Three-six. Three-six. And what's the name of the case? Glenn v. Washington County. L-A-N-D? G-L-E-N-S. Is that a published opinion? It looks like to me it is. I don't see that it's not. Yes, it is published. It's a public case. Do you have a date for that decision? Yes. I do have a site for that. Sure. That would be great, Mr. Adams. I just pulled it up on 661 F. 3rd, 460. Thank you. And in that case, the court clearly found that when you're dealing with an emotionally upset and unstable person, you're not dealing with a hardened criminal. The government's interest in resolving the situation quickly is not a very high goal for the state. Would you concede that the officers could have arrested and handcuffed your client standing up without the takedown? Yes. So the whole issue is that they wanted her on the ground while they dealt with her. And getting her on the ground is not a compelling state interest. It's not a, you know, their desire to quickly resolve the situation is not a compelling governmental interest, not in a situation where, as you know, the person is not even a suspect. Well, she became a suspect. She became engaged in a crime to which she later pleaded guilty by swinging at and contacting the body of one of the officers. And I guess it seems to me that our cases have been pretty careful not to second guess to the extent that you're asking us to do in terms of the choices that are made. I mean, it isn't a situation in which in lieu of, you know, handcuffing her standing up, they shot her or something. I mean, it's ‑‑ how do you square this with the cases that say that there has to be some deference to the judgment of the officers on the scene when they're faced with a rapidly evolving situation and a person who's flailing at them? Well, you know, in this case, you know, given what the officers knew, they knew that she was intoxicated. They, you know, in the court, in the case that I cited, that was a big factor. And second of all, that plaintiff was the son of the caller of the police rather than a criminal intruder. Both those facts are here. Well, are you saying that a reasonable officer couldn't view an intoxicated person as more dangerous than one who is sober and capable of listening to reason? I mean, there are plenty of big, mean drunks in this world. I mean, why isn't that a reasonable way for an officer to look at this situation? Well, it is a reasonable way to look at it, and they are required to reasonably take that into consideration. But at the time they arrived there, Ms. Kanda was not a criminal suspect. She was the caller. She called for help. She had been battered. She was intoxicated. She was unarmed. None of those are facts that facilitate the instant use of force that was used there. That's all I have. Thank you, counsel. We appreciate the arguments that both of you have made and accommodating our schedule. The case just argued is submitted, and we will stand adjourned. Thank you. Thank you. Thank you.
judges: Tashima, Graber, Rawlinson